UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA,

v.

SOLOMON POWELL.

Criminal Action No. 3:07–CR–324
Civil Action No. 3:12–CV–23

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Motion to Vacate, Correct or Set Aside Sentence Pursuant to 28 U.S.C. § 2255 filed by *pro se* Petitioner Solomon Powell ("§ 2255 Motion") (ECF No. 76), as well as Petitioner's Motion for Reduction of Restitution Owed to Direct Victims ("Motion to Reduce Restitution") (ECF No. 82), and Petitioner's Motion for Sentence Reduction (ECF No. 96). The Government responded to the Motions with a Motion to Dismiss Petitioners § 2255 Motion ("Motion to Dismiss") (ECF No. 89)[1] and a Response in Opposition to Petitioners Motion to Reduce Restitution. The Government did not respond to Petitioner's Motion for Sentence Reduction. For the reasons stated below, the Court GRANTS the United States' Motion to Dismiss and DISMISSES Powell's § 2255 Motion. The Court also DENIES the Motion for Reduction of Restitution and DENIES the Motion for Sentence Reduction.

## I.   BACKGROUND

Powell was indicted in an eleven-count indictment in early September 2007, stemming from his role in orchestrating a scheme in which he sold merchandise over the internet but did not deliver the products ordered and paid for by the customers. The record shows Powell ran several businesses, selling electronics over the internet and received payments through PayPal

---

[1] The Government asks the Court to consider evidence submitted in the form of an affidavit and the appellate joint appendix with its Motion to Dismiss. The Court therefore construes the Government's motion as a motion for summary judgment. Fed. R. Civ. P. 12(d); *see also United States v. Gavegnano*, No. 3:05cr17, 2012 WL 1884136, at *1 n.2 (W.D. Va. May 22, 2012).

and credit card companies, including American Express. After paying for their purchases, customers either received nothing in return or received products that did not conform to the quality product they ordered. When customers contacted Powell about their orders, he would often claim the items had been shipped and provided false tracking numbers. Other times, Powell would claim the items were back-ordered and would be shipped in the future or he would ship lower quality products to the customers. Customers complained to the Better Business Bureau ("BBB") and the complaints were investigated by postal inspectors. Throughout the investigation, the Government did not uncover any instances where a customer actually received what he or she ordered. The grand jury returned an eleven-count indictment in September of 2007, charging Powell with mail and wire fraud offenses. Powell was located in March of 2008 in the Southern District of California.

After Powell's arrest, the United States discovered that Powell had written his former landlord, Houman Haghighi, while he was in federal custody and asked Haghighi to delete email accounts from his computer and move the computer. Rather than do as Powell asked, Haghighi contacted the authorities and the Government was able to secure the evidence. An examination of the computer recovered revealed phone and email messages from customers who had been defrauded in California. As a result, the Government added an attempted destruction of evidence charge against Powell.

Powell rejected a plea offer and proceeded to trial on five counts of Wire Fraud, in violation of 18 U.S.C. § 1343, two counts of Mail Fraud, in violation of 18 U.S.C. § 1341, and one count of Attempted Destruction of Evidence, in violation of 18 U.S.C. § 1512(b)(2)(B). The Government moved to dismiss the remaining counts prior to trial. After hearing the evidence presented at trial, the jury found Powell guilty of all the remaining counts. The Court sentenced Powell to 102 months on all counts, to run concurrently, on December 18, 2008, and on May 4, 2009, the Court entered a restitution judgment of $43,732.91.

Powell appealed his conviction to the United States Court of Appeals for the Fourth

Circuit ("Fourth Circuit"). In an *Anders* brief, Powell's attorney argued this Court improperly relied on hearsay evidence at sentencing, violating the confrontation clause, and that the Court failed to provide sufficient explanation of the 18 U.S.C. § 3553(a) factors in arriving at the ultimate sentence. Powell also submitted a supplemental *pro se* brief ("supplemental brief") in support of his appeal. In his supplemental brief, Powell argued (1) there was insufficient evidence to prove all elements of mail and wire fraud, (2) the Government failed to disclose information to the defense, (3) the Government failed to prove obstruction of justice, and (4) he received ineffective assistance of counsel at trial. The Fourth Circuit published an opinion affirming the district court's judgment. *United States v. Powell*, 650 F.3d 388 (4th Cir. 2011). Powell timely filed his § 2255 Motion alleging the following nine grounds for relief:

1. Ineffective assistance of counsel – trial counsel failed to subpoena witnesses and documents.

2. Ineffective assistance of counsel – trial counsel never seriously challenged the validity of the government's evidence.

3. Ineffective assistance of counsel – trial counsel failed to question witnesses about certain evidence at trial.

4. Ineffective assistance of counsel – trial counsel's conduct, integrity, and qualifications fell below constitutional standards.

5. Wrongful conviction of obstruction of justice.

6. Insufficient evidence on Counts 6 and 7 (Wire Fraud).

7. Government withheld and falsely presented evidence.

8. American Express does not qualify entirely as a victim.

9. Disproportionality of the final sentence.

All motions are fully briefed, or the time to file responsive briefings has passed, and are therefore ripe for decision.

## II.    § 2255 MOTION

### a.  Legal Standard

Under 28 U.S.C. § 2255 ("§ 2255"), a prisoner in federal custody may attack his sentence

on four grounds: (1) the sentence violates the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *see also Hill v. United States*, 368 U.S. 424, 426–27 (1962). A claim which does not challenge the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To prevail under § 2255, the movant bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *United States v. King*, 36 F. Supp. 2d 705, 707 (E.D. Va. 1999). A *pro se* petitioner is held to a less exacting standard than an attorney in drafting his petition. *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978). Therefore, the Court generously interprets Powell's factual allegations and legal contentions.

### b. Ineffective Assistance of Counsel Grounds

Powell's first four Grounds allege his trial counsel was ineffective in his representation. Ineffective assistance of counsel claims under the Sixth Amendment are examined under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on an ineffective assistance claim, a petitioner must show: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered actual prejudice. *Id.* There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. A court must consider "the practical limitations and tactical decisions that counsel faced" when making an ineffective assistance of counsel determination. *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991).

To satisfy the first prong of the *Strickland* test, the petitioner "'must show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). When evaluating decisions regarding case investigation, a court must "regard

counsel's choices with an eye for 'reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). To satisfy the prejudice requirement, the petitioner must show that counsel's errors were serious enough to deprive the petitioner of a fair trial. *Strickland*, 466 U.S. at 687. In other words, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If it is clear the petitioner has not satisfied one prong of the *Strickland* standard, a court need not inquire into whether he satisfied the other. *Id.* at 697.

i. *Ground 1*

Powell's Ground 1 claim that trial counsel was ineffective in failing to subpoena witnesses or documents for trial, sentencing, and the restitution hearing fails. In assessing an attorney's performance, it is required "that every effort be made to eliminate the distorting effects of hindsight, to construct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Therefore, the "court must indulge in a strong presumption that counsel's conduct falls within the range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). Powell fails to overcome the presumption that his attorney's conduct was a sound trial strategy. Further, some of the errors alleged by Powell would not have affected the outcome of his trial or sentencing.

As an initial matter, trial counsel, Charles Lewis, submitted an affidavit stating that his decision not to subpoena extra witnesses was based on his investigation prior to trial and sentencing, he found no witnesses not already subpoenaed by the government who would help Powell by testifying. M. Dismiss § 2255 Motion, Ex. 2 (Lewis Affidavit), at ¶ 4(a) [hereinafter Lewis Aff.]. Two of the witnesses Powell and Lewis discussed (Haghighi and a representative of

PayPal) did appear at trial on the subpoena of the Government. *Id.* Powell mentioned another witness from Northern Virginia, but did not provide contact information and Lewis could not locate the witness through his investigation. *Id.* Rather, in Lewis's "professional judgment" calling "any additional witnesses (especially victims and investigators) would have . . . damaged Mr. Powell's position and resulted in a higher sentence." *Id.*

In light of the overwhelming evidence against Powell, Lewis's decision not to call other witnesses is objectively reasonable. The Government presented (1) eight victims detailing Powell's fraudulent representations, M. Dismiss § 2255 Motion, Ex. 1 (Appellate Joint Appendix), at 449-71, 487-503, 506-68 [hereinafter JA]; (2) representatives from eBay/PayPal, American Express, and Go-Daddy.com, tying Powell and his companies to fraudulent transactions, JA 406-48, 559-68; (3) Haghighi's testimony regarding Powell's request to conceal and destroy computer evidence, JA 568-84; (4) Computer Analyst Gonzalez's testimony regarding the evidence recovered on Powell's computer, JA 472-86; (5) Postal Inspection Service General Analyst Charlene Tyler's testimony about her financial and forensic analysis tying Powell to the companies and fraudulent transactions, JA 585-621; and (6) Postal Inspector Cross's presentation of evidence tying Powell to the fraudulent conduct and damaging statements victims made during recorded interviews, JA 641-670. There is no reason to believe, or indication from the record, that calling more victims or representatives of financial institutions would do anything other than present further evidence of Powell's involvement in the fraudulent transactions. Further, as discussed under Ground 3, any witness testimony showing negligence on the part of the financial institutions would have no effect on Powell's guilt. *See infra* Part II.b.iii.

Powell further argues trial counsel should have subpoenaed shipping records or a representative from shipping companies to show customers received or returned merchandise. This claim must also fail because shipping records would not reveal the contents of a shipment. Much of the Government's evidence showed that even where Powell did ship merchandise to a

customer, it was not the merchandise ordered. Accordingly, presenting the jury with shipping records would not prove that Powell was not guilty of the charges.

Powell also argues trial counsel should have subpoenaed records from Chevy Chase bank to prove he refunded a victim by the name of Drury Armistead around $1100 in April of 2007. At the restitution hearing, Powell testified that he refunded Armistead via two cashier's checks from Chevy Chase Bank, one for $600 and one for $700 and some change. JA 805. Inspector Cross testified that Armistead's initial claim was for $1,367.79 and he sent a note to the Inspector that he received $30 from Powell and that was all. JA 813-14. The final restitution amount for Armistead was $1,337.79. Powell cannot demonstrate counsel was deficient with regard to Armistead's losses. Counsel asked Powell about whether Armistead was refunded and Powell testified Armistead was refunded by checks from Chevy Chase Bank in the amount of roughly $1,100. JA 805. Counsel also asked Cross about Armistead's losses asking her what documentation she had to support his loss amount. JA 813-14. The Court was therefore made aware that Powell may have refunded Armistead a portion of his overall loss when considering the sentence and restitution amounts. Merely alleging counsel should have presented the evidence in a different manner does not overcome the "heavy measure of deference to counsel's judgment.'" *Strickland*, 466 U.S. at 691.

Powell finally argues trial counsel should have subpoenaed an expert to testify about whether someone had signed on to his computer after his incarceration. As discussed in Ground 3, whether someone signed on to Powell's computer would have no effect on Powell's guilt on the obstruction of justice count. *See infra* Part II.b.iii. None of Powell's claims under Ground 1 demonstrate he received ineffective assistance of counsel; accordingly, the Court DISMISSES Ground 1.

ii. *Ground 2*

Ground 2 fails because Powell cannot show he received ineffective assistance of counsel during his sentencing and restitution hearings. Powell argues that counsel should have asked

additional questions of Cross at the sentencing and restitution hearings and should have requested to review the Government's documents showing how the victims and financial institutions were victimized. Powell contends this questioning would have revealed that some of the victims listed by the Government did not exist and that Powell did not send electronics to victims Charity Parker and John Lawson, and therefore, he should not have been convicted of Counts 6 and 7. Ground 2 does not satisfy either the performance or prejudice prong of *Strickland*.

At sentencing, the main dispute was the amount of the loss and the number of victims. The sentencing guidelines provided for a twelve level increase for a loss of more than $200,000 and a ten level increase for a loss of more than $120,000. U.S.S.G. § 2B1.1(b)(1)(F)-(G). The guidelines also provided for a four level increase if the number of victims was greater than fifty and a two level increase where the number of victims was more than ten. U.S.S.G. § 2B1.1(b)(2)(A)-(B). The Government argued a loss amount of $225,157.82 and that the number of victims was over fifty. Powell's trial counsel stated

> Overall, in my judgment, any additional questioning of Inspector Cross of subpoenaing additional witnesses on these issues would not have reduced the figures any further; if anything, it could have resulted in additional support for the government's proposed loss and victim figures, resulting in a higher sentence for the defendant. Under the circumstances, I believe my strategic decision to argue the underlying validity of the government's figures worked and resulted in a four level reduction on the sentencing range, as well as a significant cut in the final actual loss amount determined by Judge Spencer for restitution purposes.

Lewis Aff. ¶ 5(a)(2). Counsel's assessment is correct. By arguing the loss figures, rather than calling, or questioning Cross regarding, each individual witness, counsel persuaded the Court to reduce Powell's total offense level by four levels and set the final restitution amount as only $43,732.91. Counsel's arguments resulted in the Court reducing the actual and intended loss amount to $199,000 from $225,157.82, netting a two-level reduction. The Court also reduced the number of victims from over fifty to over ten, resulting in another two-level reduction. Powell accordingly fails to show counsel's performance fell below an objective standard of

reasonableness or was not sound trial strategy.

Powell also cannot show prejudice. Even if counsel were to demonstrate that some individual victims did not exist, it would not have decreased his offense level. The Court based the actual and intended loss figure on American Express's write off amount as a result of Powell's scheme totaling $137,387.85. JA 762-63. The Court noted there was really no question about that amount. JA 762-63. Regardless of any other victims, the loss amount would fall in the $120,000 to $200,000 range because of American Express's losses. The number of victims would also not have been reduced to below ten. The Government presented the testimony of eight victims at trial, including American Express. JA 449-71, 487-503, 506-568. Cross also testified about other victims, stating that over the course of her investigation, her team had been able to contact about forty victims by the telephone and contacted others via email or letters. JA 754. The Fourth Circuit explicitly affirmed the Court's reliance on Cross's testimony regarding the victims losses, holding that the Confrontation Clause does not apply at sentencing, and therefore, the Court could consider hearsay testimony as long as it had "sufficient indicia of reliability." *Powell*, 650 F.3d at 393-94. Accordingly, even if Powell could prove some individual victims did not exist, it would not result in a decrease in his offense level because the number of victims was certainly over ten. The same reasoning reveals that Powell cannot show prejudice based on his counsel's performance at the restitution hearing. No evidence suggests any of the victims listed in the final restitution judgment do not exist. The loss amounts for each victim were determined by Cross's investigation, which she detailed at the hearing. *See* JA 788-802.

Powell also cannot show prejudice as a result of any deficiency in questioning Cross regarding the Parker and Lawson transactions. Powell was convicted of wire fraud for the transactions involving Parker and Lawson. A conviction for wire fraud pursuant to 18 U.S.C. § 1343 requires the Government to prove "(1) the existence of a scheme to defraud and (2) the use of . . . a wire communication in furtherance of the scheme." *United States v. Jefferson*, 674 F.3d 335, 366 (4th Cir. 2012) (quoting *United States v. Curry*, 461 F.3d 452, 457 (4th Cir. 2006)).

Any questions counsel could have asked regarding the mailing of the items ordered and promised in the course of the internet transactions are not legally significant and would therefore have no effect on whether Powell could have been convicted of wire fraud. Ground 2 is accordingly DISMISSED because Powell cannot show his counsel performed deficiently or that he was prejudiced at his sentencing or restitution hearings.

### iii. *Ground 3*

Ground 3 also fails because Powell cannot show that he received ineffective assistance of counsel based on trial counsel's failure to ask specific questions during trial. Powell first alleges his counsel failed to question the American Express representatives or bank analysts to show that these institutions were negligent in opening his merchant accounts, and that he was prejudiced because their failure to uncover his fraudulent scheme should absolve him of liability for the frauds. Powell further alleges counsel should have questioned American Express representatives about whether their cardholders committed fraud by filing chargebacks after receiving merchandise. The relevant statutes and case law, however, do not support such an argument.

Both the wire and mail fraud statutes state, in part, that, "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. §§ 1341, 1343. The focus of the offenses is the scheme to defraud. *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). The actions of the defendant are the relevant issue before the court. *See Tincher v. United States*, 11 F.2d 18, 21 (4th Cir. 1926) ("Responsibility cannot be avoided by the use of an innocent agency intentionally employed to reach and use the mails in effecting a scheme to defraud.") (quoting *Spear v. United States*, 228 F. 485, 488 (8th Cir. 1915)). Courts have found that a perpetrator of a fraud may not defend himself by blaming the victim for being duped. *See, e.g.*, *United States v. Serfling*, 504 F.3d 672, 679 (7th Cir. 2007).

Thus, even if Powell's counsel had established that the American Express should have identified his frauds earlier, this would not have resulted in acquittal of Powell for mail and wire fraud. The jury relied on significant evidence, finding Powell devised a scheme to defraud or obtain money by false or fraudulent pretenses, promises, or representations. Hence, Powell's actions constituted fraud under both the mail and wire fraud statutes. Powell cannot avoid liability because he intentionally employed innocent agents to carry out his scheme. *See Tincher*, 11 F.2d at 21. The financial institutions' failure to stop the fraud in no way limits Powell's criminal liability. As a result, Powell cannot show any prejudice resulting from his counsel's failure to question John Golbreski or Charlene Tyler regarding American Express's alleged negligence in opening Powell's accounts.

Further, it is clear that Powell's trial counsel's performance was not deficient. Counsel states that he considered the argument, but explained to Powell that "such an approach was completely fruitless . . . ." Lewis Aff. ¶ 4(b)(1). In addition, he called upon his prior observations of the Court, wherein he had observed the Court immediately reject a similar argument, and noted that it "did not help the specific defendant's position at sentencing." *Id.* It is clear that Powell's counsel made a tactical decision to avoid such an argument. Powell's counsel's tactical decision to avoid what he viewed as a fruitless and potentially harmful approach does not constitute deficient performance.

Powell next alleges that his trial counsel was ineffective in failing to question computer specialist Peter Gonzalez about whether the Microsoft Windows Vista operating system records each time a person logs on to a computer. If counsel had asked these questions, Powell contends the jury would have acquitted him of the Attempted Destruction of Justice charge because it would have questioned whether Haghighi or someone else planted or altered evidence on his computer. The attempted destruction of evidence statute penalizes anyone who

> knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to cause or induce any person to alter, destroy, mutilate, or conceal an

object with intent to impair the object's integrity or availability for use in an official proceeding

18 U.S.C. § 1512(b)(2)(B). Hence, the statute punishes "the endeavor to bring about a forbidden result and not the success in actually achieving the result." *United States v. Maggitt*, 784 F.2d 590, 593 (5th Cir. 1986).

In the case at hand, it is evident that Powell attempted to destroy evidence as explained under 18 U.S.C. §1512(b)(2)(B). After his arrest, Powell sent a letter to his landlord, Haghighi, asking Haghighi to take a number of actions with respect to Powell's property. Gov't's Mot. to Dismiss Ex. 6 (Letter from Powell to Haghighi) [hereinafter "Haghighi letter"]. Among these instructions, Powell asked Haghighi to "store" his computer in the computer box in the closet on Haghighi's balcony, "[l]og in to my computer," delete all email messages from Microsoft Outlook, and delete specific Google Gmail accounts, including "<u>EVERY</u> Google account you see on my computer on Internet Explorer." *Id.* As Powell was in prison, and had previous knowledge that he was under investigation by the FBI, *see id.*, it is clear that he was aware of official legal proceedings against him. The natural probable consequences of deleting these emails would have been the destruction of evidence that was used to convict Powell of the fraud charges. *See Maggitt*, 784 F.2d at593. Accordingly, the jury properly found that Powell attempted to destroy evidence. Therefore, Peter Gonzalez's testimony about the operating system's log on tracking capabilities would be irrelevant, even if he had stated that the operating system tracks when someone logs into the computer. Powell, therefore cannot show he was prejudiced by trial counsel's decision not to call an expert on his computer's operating system.

Finally, Powell alleges the jury would have acquitted him of some wire fraud charges if his counsel had asked witness Timothy Pitkin from eBay about funds remaining in one of Powell's company's Paypal account. This claim fails to show counsel was deficient or prejudice to Powell. Powell's counsel indicates he did not believe the line of questioning would have "helped our position where the trial evidence showed misrepresentations in connection with the

sales and the witnesses failed to receive the products they ordered." Lewis Aff. ¶ 4(b)(3). In Lewis's "strategic judgment, the proposed questioning of Mr. Pitkin would have had no effect on the victim testimony at trial, the fundamental representations at issue, or the final guilty verdicts." Lewis Aff. ¶ 4(b)(3). Given the deference to trial counsel's performance and strategic decisions, Powell fails to show Lewis performed deficiently. Further, given the substantial evidence presented at trial, Powell's proposed line of questioning is not reasonably likely to have changed the outcome of the trial. *See supra* Part II.b.i. None of Powell's claims under Ground 3 indicate he received ineffective assistance of counsel, and therefore, the Court DISMISSES Ground 3.

### iv. *Ground 4*

Powell details a litany of complaints in Ground 4 regarding his counsel's conduct, integrity, and qualifications. These complaints do not amount to a meritorious ineffective assistance of counsel claim. Each of Powell's twelve arguments under Ground 4 fail either the performance or prejudice prong of *Strickland*:

- Nothing in the record indicates Lewis was inexperienced in federal criminal law or white collar crime cases. Regardless, an attorney's "lack of experience does not establish *ipso facto* that he was ineffective." *Kandies v. Polk*, 385 F.3d 457, 469 n.7 (4th Cir. 2004) *vacated on other grounds by* 545 U.S. 1137 (2005). Further, as discussed throughout this Opinion, Powell's claims fail to indicate his attorney made errors at trial and on appeal.

- Counsel did not err in raising the Confrontation Clause argument at sentencing and on appeal because the Fourth Circuit had not yet explicitly held the Confrontation Clause did not apply at sentencing. *See United States v. Powell*, 650 F.3d 388, 390 (4th Cir 2011) (agreeing with sister circuits that the Confrontation Clause does not apply in sentencing proceedings).

- Powell was not prejudiced by counsel's arguments that Counts 3 and 4 should be dismissed based on interstate commerce and monetary loss arguments. Powell was not

prejudiced by counsel's arguments on Count 3 because it was ultimately dismissed by the Government. The record further indicates that the indictment on Count 4 contained the essential facts constituting the offense of wire fraud and would not have been dismissed regardless of Powell's attorney's arguments. *See* Fed. R. Crim. P. 7(c)(1).

- Despite Powell's contrary contentions, counsel indicates he told Powell on several occasions that the American Express losses could be used against him in trial and at sentencing. Lewis Aff. ¶ 6(a). Lewis indicates he specifically discussed with Powell that the American Express losses could be used as a potential bargaining chip in plea negotiations with the Government. Lewis Aff. ¶ 6(a). Further, Powell claims he was prejudiced because he would have moved for a departure in sentencing had he known the American Express losses would be counted against him. This argument is belied by the fact that American Express Senior Special Agent John Golbreski provided extensive testimony regarding American Express's losses at trial. JA 559-68. Powell was therefore absolutely aware that the American Express losses were at issue in the trial and likely to be raised at sentencing.

- Counsel did not err in deciding not to raise a sufficiency of the evidence argument on appeal. Counsel states he "believed that the evidence in this case was overwhelming and any sufficiency argument on appeal would be completely frivolous." Lewis Aff. ¶ 6(b). Counsel's conclusion was reasonable given the substantial evidence presented by the Government at trial. Further, Powell was in no way prejudiced by Counsel's decision not to raise the sufficiency of the evidence argument because he raised the argument in his supplemental brief as allowed per the Fourth Circuit's *Anders* notice. M. Dismiss § 2255 Motion, Ex. 3 at 7, Ex. 4.

- Counsel did not err in not seeking a new trial for confrontation purposes. Counsel raised Confrontation Clause arguments at trial and on appeal. This Court and the Fourth Circuit rejected counsel's argument. Therefore, counsel did not err in not raising the

issue again and there is no likelihood that Powell would have received a new trial had such a motion been filed.

- Counsel did not err in filing to raise a "friendly fraud" argument that a customer received the merchandise ordered and still sought to obtain a refund or chargeback, alleging he never received the merchandise. Powell contends that victim John Lawson and others received merchandise of substantial value, and therefore, there is no way to know if the victims were actual victims or were attempting to defraud Powell. Counsel stated he "did not find any evidence to support such an argument before, during, or after trial," except with respect to John Lawson. Lewis Aff. ¶ 6(c). Counsel did however raise the issue with Lawson on cross examination by pointing out that he bought eleven cameras for $1,959.45 and received some of the cameras in the mail. Lewis Aff. ¶ 6(c); JA 545. Lawson was able to sell one camera on eBay and Lewis questioned Lawson about the value he received for it. Lewis Aff. ¶ 6(c); JA 545-46. Counsel also clarified on cross examination that Lawson received a refund from American express in the amount of $1,959, and of $750 from Powell's company. Lewis Aff. ¶ 6(c); JA 548. Counsel also argued the transaction in closing arguments, but based on the other evidence of misrepresentations to Lawson, the jury found Powell guilty of Count 6 based on the Lawson transaction. Lewis Aff. ¶ 6(c). The record makes clear that counsel considered Powell's proposed "friendly fraud" argument and made use of the argument strategically where evidence provided support. Accordingly, Powell fails to show counsel was deficient in this regard.

- Powell's counsel did not provide deficient performance in filing Powell's appeal, nor can he show he was prejudiced by counsel's request for an extension of time to file the appellate petition. Counsel sough an extension of time in filing the appellate brief due to scheduling conflicts and a medical condition requiring an operation. The Fourth Circuit accepted, and considered, counsel's appellate brief and issued a published opinion in the

case. *Powell*, 650 F.3d 388. Under these circumstances, Powell was not prejudiced by any delay in counsel's filing with the Fourth Circuit.

- Powell's contention that counsel was investigated by the Virginia State Bar ("VSB") does not demonstrate counsel was deficient. Powell filed a complaint against Lewis with the VSB and the VSB asked Lewis to respond. *See* Lewis Aff. ¶ 6(d). After receiving Lewis's response, the VSB dismissed the complaint. Powell further contends Lewis did not communicate with him regarding the location of his property. Lewis indicates he advised Powell and his family members that Powell's property was returned by investigators and was ready to be picked up at the office, but no one has come to pick up the property. Lewis Aff. ¶ 6(d). Lewis further states he remains prepared to dispose of the property according to Powell's instructions. Lewis Aff. ¶ 6(d). Powell's claims do not show Lewis performed deficiently; further the whereabouts of his property did not prejudice him at trial, sentencing, or appeal.

- For the same reasons delay in the filing of the appellate brief on Powell's behalf did not prejudice him on appeal, a delay in oral argument did not prejudice Powell.

- Powell next contends counsel falsely told the VSB he was not appointed to represent Powell on case number 04-4012 in the Fourth Circuit. This claim fails as it arises from a typographical error and misinterpretation on Powell's behalf. The exhibits submitted with Powell's § 2255 Motion and counsel's affidavit demonstrate the misunderstanding. At some point during the appeals process, counsel sent a draft motion for voluntary dismissal of appeal to Powell for his consideration and potential signature. § 2255 Motion Ex. 3. The motion mistakenly listed Powell's Fourth Circuit case number at 04-4012 rather than 09-4012. Powell then complained to the VSB regarding Lewis's conduct in handling case numbers 04-4012 and 09-4012. *See* § 2255 Motion Ex. 4. Lewis responded that he was not appointed by the court of case number 04-4012 and was not privileged in the case or the results. § 2255 Motion Ex. 4. Powell now states this was a

false statement. Lewis's affidavit demonstrates he subsequently learned of the typographical error and stated he did not represent Powell or any other person in relation to case number 04-4012. Lewis Aff. ¶ 6(e). This misunderstanding does not constitute deficient performance and in no way prejudiced Powell.

- Finally, Powell's claim that counsel was ineffective in failing to request that seized assets or forfeited funds be applied to restitution payments fails. The Court addressed this issue in response to Powell's Motion to Seek Status of Forfeited Funds Remitted to Victims (ECF No. 75). In its Order, the Court recognized that the Government explained it applied forfeited funds to satisfy the restitution obligation and submitted a Case Inquiry Report detailing how the funds forfeited were distributed to the victims (ECF No. 79). Because the Government applied the funds to the restitution obligation, there was no need for counsel to request such a disposition of the funds and Powell was not prejudiced.

None of the errors claimed by Powell under Ground 4 rise to the level of ineffective assistance of counsel; Ground 4 is therefore DISMISSED.

### c. Remaining Claims

The Government contends all remaining grounds for relief raised by Powell are procedurally defaulted because they were, or could have been raised on appeal. Issues fully litigated on direct appeal cannot be raised on collateral attack. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (stating a defendant may not "recast under the guise of collateral attack, questions fully considered by this court [on direct appeal]"). Where there has been no change in the applicable law, the district court cannot relitigate claims decided by the circuit court. *United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004). Additionally, in collateral proceedings, a petitioner may not assert claims he could have raised, but failed to, on direct review. *Stone v. Powell*, 428 U.S. 465, 478 n.10 (1976); *United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009). A petitioner is barred from raising any claim reviewable on appeal

absent showings of cause and prejudice or actual innocence. *United States v. Frady*, 456 U.S. 152, 167–68 (1982); *see also Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Landrum*, 93 F.3d 122, 124–25 (4th Cir. 1996). Where the Government fails to raise the procedural bar, the district court may consider the merits of a claim that a petitioner could have, but failed to raise on appeal. *United States v. Adams*, 22 Fed. App'x 98, 101 (4th Cir. 2001); *see also United States v. Metzger*, 3 F.3d 756, 757 (4th Cir. 1993).

Claims under Grounds 5 through 9 are procedurally barred. Ground 5 alleges wrongful conviction of obstruction of justice and was raised in his supplemental brief as the third issue presented. M. Dismiss § 2255 Motion, Ex. 3 (Supplemental Appellate Brief), at 20-23 [hereinafter Supplemental Brief] ("Did the Government prove obstruction of justice by the appellant?"). Ground 6 alleges insufficient evidence on Counts 6 and 7 (wire fraud for the Lawson and Parker transactions) and was raised in Powell's supplemental brief as the first issue presented. Supplemental Brief 7, 12-14 ("Was there sufficient evidence to prove all the elements of mail and wire fraud?" and detailing the reasons the Lawson and Parker transactions did not prove wire fraud). Ground 7 alleges Powell was prejudiced when the Government withheld and falsely presented evidence to the Court. This ground was covered in the second issue presented in Powell's supplemental brief. Supplemental Brief 17-20 ("Was the Government's failure to disclose certain information to the defense prejudicial to the appellant?"). Ground 8 alleges American Express should not have been deemed a victim and was raised in Powell's supplemental brief when challenging the sufficiency of the evidence for wire and mail fraud. Supplemental Brief 8-9 (alleging American Express was negligent in opening accounts for Powell).

Powell's supplemental brief was likely deemed timely by the Fourth Circuit according to the Prison Mailbox Rule. *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (holding an inmate's document is deemed filed as of the date it is deposited in the prison mailing system). There is no indication the Fourth Circuit did not deem Powell's supplemental brief timely submitted on

January 27, 2010 as stated in the certificate of service. *See* Supplemental Brief 29. Even if Powell's submission was not deemed timely or he now raises supporting claims that were not fully asserted in the Fourth Circuit, they are still barred because they could have been raised on appeal through the *Anders* process. *Stone*, 428 U.S. at 478 n.10; *Linder*, 552 F.3d 391. Ground 9, proportionality of the sentence, was not raised on appeal, but could have been. *See, e.g.*, *Gall v. United States*, 552 U.S. 38, 47 (2007) (describing appellate court review of sentences for reasonableness). Accordingly, all claims raised in Grounds 5 through 9 were, or could have been, raised on appeal and are therefore procedurally barred. The Court therefore DISMISSES Grounds 5 through 9.

### d. Certificate of Appealability

A district court that enters a final order denying a § 2255 motion must grant or deny a certificate of appealability. Rule 11(a) of the Rules Governing Section 2255 Proceedings. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional Grounds debatable or wrong. *Miller-El*, 537 U.S. at 336–38 (citing *Slack*, 529 U.S. at 484). For the reasons stated more fully above, no law or evidence suggests Powell is entitled to further consideration of his claims. Accordingly, the Court DENIES a certificate of appealability.

## III.   MOTION FOR REDUCTION OF RESTITUTION

Powell asks the Court to reduce the amount of restitution owed to the direct victims (the non-financial institution victims) to a total of $1,541.02 and to determine the outstanding balance is $892.31. In support, Powell contends several victims received restitution above their actual losses in violation of 18 U.S.C. §§ 3663 and 3664. Each of the "overpayments" alleged by Powell are fully explained by the Government's clarification of how to read the Case Information

Report, which details restitution payments made to Powell's victims. Powell alleges a number of victims were paid more than they were owed as demonstrated by the Case Inquiry Report's summary page, which shows the total paid exceeds the amount owed to eight victims. As the Government explained in its response, the summary pages "Total Paid" column includes all amounts *issued*, but not necessarily negotiated, to the victims. Later pages in the spreadsheet describe the amounts per victim in more detail. Within the detailed pages a row indicates an amount "Refunded," reflecting payments issued to a victim but never negotiated. These uncashed amounts were "refunded" back to the case through the Intra-Governmental Payment and Collection System and the amount was then reissued to the victim making the amount listed in the total owed row correct. Each "overpayment" listed by Powell is accounted for by the Government's explanation.

Powell also indicates the Government never explained the "Apportioned" amount listed on the summary page of the Case Inquiry Report. This amount indicates moneys received by the Court, which have not yet been paid out to victims. This results from the Court receiving funds to be paid out initially or after an uncashed check is refunded as described above. This amount in no way justifies a reduction in Powell's restitution amount.

Powell's remaining arguments regarding the appropriateness of holding him accountable for losses of victims who did not personally testify at trial have been addressed numerous times by this Court and the Fourth Circuit. There is no error in requiring Powell to pay restitution for losses not included in the indictment and the Constitution does not require that Powell be able to confront each victim in sentencing. The Court therefore DENIES Powell's Motion for Reduction of Restitution.

## IV. <u>MOTION FOR SENTENCE REDUCTION</u>

In November of 2012, Powell filed a Motion for Sentence Reduction (ECF No. 96).[2] In his

---

[2] The Court also received a letter from Powell on March 11, 2013, again asking the Court to grant his motion for a sentence reduction. The letter presents similar arguments raised by Powell in his Motion.

motion, Powell asks the Court to reduce his sentence from 120 months to 84 months and indicates the Court may dismiss his § 2255 Motion if his Motion for Sentence Reduction is granted. In support of the reduction, Powell recounts many of the grounds raised in his § 2255 Motion. Powell further reasons that he should receive a sentence reduction based on prison conditions. Finally, Powell states he is completely remorseful of his actions and asks the Court to reduce his sentence to 84 months.

Powell's Motion for Sentence Reduction must be DENIED. This Court has no generalized authority to revisit a sentence once imposed. *See* 18 U.S.C. § 3582(b). 18 U.S.C. § 3582(c) provides the exclusive bases on which a court may modify a sentence after it has become final. Powell's request for modification of his sentence is not authorized by any subsection of § 3582(c). Therefore, the Motion for Sentencing Reduction is DENIED.

## V. <u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS the United States' Motion to Dismiss, DISMISSES Powell's § 2255 Motion, and DENIES a Certificate of Appealability. The Court further DENIES Powell's Motion for Reduction of Restitution and DENIES Powell's Motion for Sentence Reduction.

Let the Clerk send a copy of this Memorandum Opinion to Petitioner and all counsel of record.

An appropriate order shall issue.

```
_____/s/_____
James R. Spencer
United States District Judge
```

ENTERED this __20th__ day of March 2013.